## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

WAYMON JONES, SR.,                    :

     Plaintiff,                    :
                                    Case No. 3:12cv00392

 vs.                                   :

                                    District Judge Thomas M. Rose
CAROLYN COLVIN,                       :     Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,              :

     Defendant.                    :

## REPORT AND RECOMMENDATIONS[1]

### I.    <u>Introduction</u>

Plaintiff Waymon Jones, Sr. brings this case challenging the Social Security Administration's denial of his applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  Plaintiff filed his SSI and DIB applications on May 20, 2008, asserting that he has been under a "disability" since November 5, 2007. (*PageID##* 215-18, 219-25).  Plaintiff claims to be disabled due to numerous heart related problems.  (*See PageID#* 246).

After various administrative proceedings, Administrative Law Judge (ALJ) Carol K. Bowen denied Plaintiff's applications based on her conclusion that Plaintiff's

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

impairments did not constitute a "disability" within the meaning of the Social Security

Act.  (*PageID##* 80-91).  The ALJ's nondisability determination and the resulting denial

of benefits later became the final decision of the Social Security Administration.  This

Court has jurisdiction to review the administrative denial of his applications.  *See* 42

U.S.C. §§ 405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the

Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. # 11),

the administrative record (Doc. # 6), and the record as a whole.

## II.     Background

### A.     Plaintiff's Vocational Profile and Testimony[2]

Plaintiff was 42 years old on his alleged disability onset date, which defined him

as a "younger individual" for purposes of resolving his DIB and SSI claims.  *See* 20

C.F.R. §§ 404.1563(c); 416.963(c)[3]; (*PageID##* 89, 240).  Plaintiff has a high school

education,  *see* 20 C.F.R. § 404.1564(b)(4); (*PageID#* 251), and past relevant

employment as a warehouse worker, sheet metal worker, street sweeper operator, truck

driver, duct installer, and industrial truck operator.  (*PageID##* 89, 247).

Plaintiff testified at the administrative hearing that he is forgetful, has shortness of

breath, and experiences back pain.  (*PageID#* 105).  He stated his left leg will start

---

[2]As resolution of the issues presented in this case does not involve vocational expert testimony, the Court will, accordingly, not summarize such testimony.

[3]The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

swelling or throbbing if he sits too long.  *Id.*  He stated he experiences episodes of chest pain lasting from 30 to 60 minutes, approximately two or three times per week.  He also testified these episodes are generally triggered by stress and depression.  (*PageID#* 106).  He stated he experiences panic attacks about four times per week.  *Id.*

As to his activities of daily living, Plaintiff reported that he sees his wife off to work, watches television, and will "just stir around the house."  (*PageID#* 108).  Plaintiff testified he does not perform any household chores.  He tries to mow the grass, but it takes him three or four days to complete.  *Id.*  He also testified that he does not sleep well, obtaining about four hours of sleep a night.  (*PageID#* 112).

Plaintiff estimated that he can only stand or sit for about 30 to 60 minutes before needing to change positions and can lift about ten pounds.  (*PageID#* 113).  He also testified he started experiencing problems with his eyesight after he started taking his medications. (*PageID#* 116).

###   B.   <u>Treatment History and Relevant Medical Opinions</u>

Plaintiff's medical history includes an acute inferior myocardial infarction in November 2007, in which he underwent stenting to his right coronary artery.  (*PageID##* 341-66).  A January 2008 stress cardiolite registered at 10.3 mets and was stopped due to shortness of breath and fatigue, the EKG portion was negative for ischemia.  (*PageID##* 383-85).  In February 2008, Plaintiff was found to have normal heart function with an ejection fraction greater than 65% with no obvious regional wall motion abnormalities. (*PageID#* 380).

3

Plaintiff was re-catheterized in May 2008 and underwent percutaneous transluminal coronary angioplasty (PTCA) and stenting of his circumflex artery, as well as a repeat PTCA of the narrowed arrow and the distal aspect of the stent to the right coronary artery.  (*PageID##* 474, 544).  An exercise study performed on July 22, 2008 was negative for ischemia and his ejection fraction was 70%.  (*PageID#* 545).

In April 2009, Plaintiff underwent a cardiac catheterization and was found to be "relatively well revascularized," with no findings that were hemodynamically significant and normal left ventricular systolic function.  (*PageID##* 667-69).  Plaintiff's cardiologist assessed recurrent chest pain consistent with angina.  Plaintiff's symptoms had been exertional in nature, and he was found to have coronary artery disease, status post-multiple percutaneous coronary interventions to his right coronary artery and circumflex arteries.  (*PageID#* 666).

Plaintiff relies on the opinions of his treating primary care physician, Kwasi A. Nenonene, M.D.  The record shows that Dr. Nenonene treated Plaintiff from January 2002 through, at least, February 2010.  (*PageID##* 526-41, 584-95, 802-46).  Dr. Nenonene's clinical notes reveal that Plaintiff was seen for shortness of breath, tightness in chest, emergency room follow up, and lower back pain.  *Id.*

Dr. Nenonene completed a Basic Medical form on behalf of the Ohio Department of Job and Family Services on October 15, 2008.  Dr. Nenonene indicated that Plaintiff's medical conditions include hypertension, coronary artery disease, hyperlipidemia, an anxiety disorder, left shoulder pain, and lower back pain.  Plaintiff's status was reported

as "good/stable [with treatment]."  Dr. Nenonene found that Plaintiff is limited to lifting no more than 6-10 pounds, and to standing, walking and sitting for only 1-2 hours without interruption, per 8-hour workday.  Additionally, Dr. Nenonene found Plaintiff was moderately limited in pushing/pulling, bending, reaching and handling but not significantly limited in repetitive foot movements.  Dr. Nenonene based his opinion on physical examinations, consultations and the medical records.  Dr. Nenonene concluded that Plaintiff would be unemployable for 12 months or more.   (*PageID*## 613-14).

Dr. Nenonene completed an updated Basic Medical form in May 2010.  Plaintiff's status was reported as "poor but stable."  Dr. Nenonene found that Plaintiff is limited to lifting no more than 6-10 pounds, and from standing, walking and/or sitting no more than 2 hours per day on a sustained basis, up to 6 hours per 8-hour work day.  Dr. Nenonene opined that Plaintiff had moderate limitations in pushing, pulling, bending, reaching, and handling, but was not significantly limited with repetitive foot movements.  Again, Dr. Nenonene opined that Plaintiff was unemployable.  (*PageID*## 721-23).

That same day, Dr. Nenonene completed an Ability to Work assessment form in which he indicated that Plaintiff could only stand/walk and sit for ½ to 2 hours in an 8-hour work day.  Dr. Nenonene opined that Plaintiff could not use his feet for repetitive movement, and could never lift over 50 pounds, bend, squat, crawl or climb.  (*PageID*# 724).

Plaintiff began receiving mental health treatment at Day-Mont West Behavioral Health Care Center on January 23, 2009.  (*PageID*## 622-36).  At the time of his initial

5

evaluation, Plaintiff was found to have a flat affect and depressed mood, but good eye contact, clear speech, normal thought processes, a cooperative demeanor, and normal judgment and insight. (*PageID#* 633). Plaintiff was diagnosed with dysthymic disorder and was assigned a Global Assessment of Functioning (GAF) score of 63.[4] (*PageID#* 631).

At his initial psychiatric evaluation with treating psychiatrist, Dr. Wee, on January 30, 2009, it was reported that Plaintiff had only mild limitations with attention and concentration. (*PageID##* 617-20). Upon mental status examination, his affect was noted as constricted with moderate depression. Plaintiff had good eye contact, clear speech, normal thought processes, a cooperative demeanor, and normal judgment and insight. *Id.* He was diagnosed with a panic disorder and dysthymic disorder and started on Cymbalta.

At his first follow-up appointment on February 10, 2009, Plaintiff reported that Cymbalta was helping and things "don't seem quite as bad." (*PageID#* 621). The records from Day-Mont revealed that Plaintiff continued receiving counseling at that facility and Dr. Wee continued to evaluate his medications. (*PageID##* 616-43, 739-99).

---

[4] Global Assessment of Functioning ("GAF") is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r of Soc. Sec.*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. A GAF score of 61-70 indicates that a person has only mild symptoms or some difficulty with social, occupational or school functioning, but such a person can generally function pretty well and have some meaningful interpersonal relationships. *Id.*

As to his mental impairments, Plaintiff relies on the opinion of his treating psychiatrist, Dr. Wee, who along with treating counselor, Margaret Barker, LSW completed interrogatories on April 23, 2010. (*PageID##* 711-20). Dr. Wee indicated that he treated Plaintiff since January 30, 2009 for stress and panic attacks since his heart attack, noting that Plaintiff isolates himself in his basement, and that he avoids people. According to Dr. Wee and Counselor Barker, Plaintiff avoids public places; has a short temperament; has decreased memory and concentration; and has paranoia and irritability. Dr. Wee opined that Plaintiff cannot be prompt and regular in attendance, and that he would not be able to respond appropriately to supervisors, co-workers, and customary work pressures. (*PageID#* 714). Further, it was noted that Plaintiff would not be able to withstand the pressure of meeting normal work standards of work productivity and work accuracy without significant risk of physical and psychological decompensation or worsening of his physical and mental impairments. (*PageID#* 715). Likewise, Plaintiff would also not be able to sustain attention or concentration on his work to meet normal work standards of work productivity and work accuracy, and would not be able to understand, remember, and carry out simple instructions without requiring very close supervision. (*PageID#* 715). Plaintiff would have trouble behaving in an emotionally stable manner, relating predictably in social situations, and would not be reliable. (*PageID#* 716). Dr. Wee also opined that Plaintiff would not be able to do the following: maintain attention and concentration for extended periods (approximately 2 hour segments); perform activities within a schedule, maintain regular attendance, and be

7

punctual within customary tolerances; complete a normal work day and work week without interruptions from psychologically and/or physically based symptoms and perform at a consistent pace without unreasonable numbers and length of rest periods; respond appropriately to changes in the routine work setting; get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; sustain ordinary routine without special supervision; work in coordination with, or proximity to, others without being unduly distracted by them; or accept instructions and respond appropriately to criticism from supervisors. (*PageID##* 716-19).

Dr. Wee and Counselor Barker concluded that Plaintiff is markedly restricted in activities of daily living; extremely restricted in difficulties maintaining social function; and markedly restricted in deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. (*PageID##* 719-20). In May 2010, Plaintiff reported being in a good mood and optimistic. (*PageID#* 745).

The Commissioner relies on the opinions of several non-treating medical professionals. Lynne Torello, M.D., reviewed the file on behalf of the Ohio Bureau of Disability Determination on November 24, 2008. (*PageID##* 605-12). Dr. Torello concluded that Plaintiff could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. (*PageID#* 606). Dr. Torello opined that Plaintiff could stand and/or walk, as well as sit, for about 6 hours in an 8-hour workday. *Id.* Plaintiff could only occasionally climb ramps/stairs, ladders, ropes, or scaffolds, and can only occasionally balance, stoop, kneel, crawl, or crouch. (*PageID#* 607). Dr. Torello also found that

8

Plaintiff was to avoid concentrated exposure to temperature extremes.  (*PageID#* 609).

Dr. Torello concluded that Plaintiff's statements were only partially credible, noting that

Plaintiff reported being able to mow the lawn and workout.  (*PageID#* 610).  Another

state agency physician, Walter Holbrook, M.D., affirmed Dr. Torello's assessment on

June 1, 2009.  (*PageID#* 682).

After review of the medical record on April 13, 2009, Carl Tishler, Ph.D. assessed

Plaintiff's mental condition.  (*PageID##* 644-61).  Dr. Tishler found Plaintiff had mild

restrictions in activities of daily living; moderate difficulties in social functioning and in

maintaining concentration, persistence, or pace; and no episodes of decompensation.

(*PageID#*  658).

Dr. Tishler found that Plaintiff was able to maintain a good relationship with his

wife and have good contact with his siblings.  (*PageID#* 646).  Dr. Tishler considered

Plaintiff's allegations credible and supported by the "file findings."  He concluded that

Plaintiff was "capable of simple, repetitive tasks, which involves only superficial contact

with the public in a low stress work environment."  *Id.*

III.    **Administrative Review**

A.    **"Disability" Defined**

To be eligible for SSI or DIB a claimant must be under a "disability" within the

definition of the Social Security Act.  *See* 42 U.S.C. §§ 423(a), (d), 1382c(a).  The

definition of the term "disability" is essentially the same for both DIB and SSI.  *See*

*Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory

9

meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B.    ALJ Bowen's Decision

ALJ Bowen resolved Plaintiff's disability claim by using the five-Step sequential evaluation procedure required by Social Security Regulations.  *See PageID##* 81-82; *see also* 20 C.F.R. § 404.1520(a)(4).  Her pertinent findings began at Step 2 of the sequential evaluation where she concluded that Plaintiff had the following severe impairments: coronary artery disease status post myocardial infarction and stenting; dysthymic disorder; panic disorder; and COPD (chronic obstructive pulmonary disease). (*PageID#* 82).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Commissioner's Listing of Impairments.  (*PageID#* 83).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform light work,[5] subject to the following limitations:

> no climbing ladders, ropes or scaffolds; occasional climbing ramps or stairs; occasional balancing, stooping, kneeling, crouching and crawling; no overhead reaching; clean-air, temperature-controlled environment; no hazardous machinery or unprotected heights; simple, routine, and repetitive tasks in a low-stress job (i.e., only occasional changes in work-setting, no hazardous conditions, and no production-rate pace demands, and no public interaction) with superficial interaction with co-workers with no tandem tasks and no "over the shoulder" supervision.

(*PageID#* 85).

The ALJ concluded at Step 4 that Plaintiff is unable to perform his past relevant work.  (*PageID#* 89).  At Step 5, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy.  (*PageID##* 89-90).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI.  (*PageID##* 90-91).

## IV.  <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

---

[5]The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.     Discussion

### A.     The Parties' Contentions

12

Plaintiff contends that the ALJ erred in her evaluation of the medical source opinions.  Specifically, Plaintiff argues that the ALJ failed to grant appropriate weight to the opinion of his treating medical sources.  (Doc. #7, *PageID#* 859).  According to Plaintiff, the overwhelming medical evidence supports the opinions of treating physician, Dr. Nenonene, and treating psychiatrist, Dr. Wee, and the ALJ erroneously relied on the opinions of the nonexamining State agency reviewers.  (*Id.*, *PageID#* 865).  Plaintiff also asserts that the combination of his physical and mental impairments, combined with side effects from his medications and other aggravating factors, render him unable to work. (*Id.*, *PageID#* 868).

The Commissioner contends that substantial evidence supports the ALJ's determination that Drs. Nenonene and Wee's opinions were not entitled to controlling weight.  (Doc. #10, *PageID#* 878).  The Commissioner contends that the ALJ properly noted that Dr. Wee's assessment was deserving of little weight because it was "based almost entirely on Plaintiff's self-reporting" and not on clinical observation or objective evidence.  (*Id.*, *PageID#* 879).  In addition, according to the Commissioner, Plaintiff's treatment history was not consistent with his allegations of disabling mental health issues. (*Id.*, *PageID##* 881-82).  Finally, the Commissioner argues that the ALJ properly relied on Dr. Tishler's assessment in determining Plaintiff's mental RFC.  (*Id.*, *PageID##* 882-83).

As to Dr. Nenonene's opinions, the Commissioner argues that they were internally inconsistent, inconsistent with his treatment notes, extreme, and not consistent with the objective medical evidence. (*Id.*, *PageID##* 885-87).

As discussed below, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

### B.     Weighing Medical Source Opinions

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875–76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937–38 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 368 (6th Cir.  2013).

Generally, "the opinions of treating physicians are entitled to controlling weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007), citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997).  However, "'[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley*, 582 F.3d at 406*, quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2,

14

1996).  In *Wilson*, 378 F.3d at 546, the Sixth Circuit noted that a treating physician's opinion can be discounted if: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques; (2) it is inconsistent with substantial evidence in the record; (3) it does not identify the evidence supporting its finding; and (4) if it fares poorly when applying the factors listed in 20 C.F.R. § 404.1527(d)(2), which include, *inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record.

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity.  20 C.F.R. § 404.1527(e).  Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance.  20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

As to non-treating medical sources, the Regulations do not permit an ALJ to automatically accept or reject their opinions.  *See id* at *2-*3.  The Regulations explain, "[i]n deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."  20 C.F.R. §404.1527(b).  To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 404.1527(d) including, at a minium, the factors of supportability, consistency, and specialization.  *See* 20 C.F.R. § 404.1572(f); *see also* Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *2-*3.

15

C.    **Analysis**

In considering Dr. Nenonene's opinions, ALJ Bowen reviewed the record and medical evidence before her and concluded that Dr. Nenonene's opinions were entitled to "little weight" finding them "somewhat disproportionate to objective record." (*PageID#* 88).  The ALJ noted that Dr. Nenonene's October 2008 assessment "says the claimant is in good/stable condition and the sitting, standing, walking, and lifting limitations are not supported by objective findings." *Id.*  The ALJ went to note that Dr. Nenonene's May 2010 report "says the claimant is in poor, but stable condition." *Id.*  The ALJ cited her impression that the sitting, standing, walking, and lifting limitations suggested by Dr. Nenonene are not representative of someone who is disabled.  *Id.*  A review of the ALJ's decision indicates that she applied the correct legal criteria in assessing the medical source opinion of Dr. Nenonene.

Dr. Nenonene completed two functional capacity forms in May 2010.  *See PageID##* 721-23, 724.  On the first assessment, Dr. Nenonene opined that Plaintiff was "not significantly limited" with repetitive foot movements, and on the other, he opined that Plaintiff could not use his feet for repetitive movement at all.  (*Compare PageID#* 722 to *PageID#* 724).  Also, on the Basic Medical form completed in May 2010, Dr. Nenonene opined that Plaintiff had moderate limitations in pushing, pulling, bending, reaching, and handling, whereas, on the "Ability to Work" form completed that same day, Dr. Nenonene opined that Plaintiff could never do these things.  *Id.*  Dr. Nenonene consistently reported that Plaintiff had no greater than "moderate" limitations in his

16

ability to perform work-related tasks, yet nonetheless concluded that Plaintiff is

"unemployable."  (*See PageID##* 613-14, 721-23, 724).  Thus, Dr. Nenonene's opinion

was internally inconsistent, which is a proper basis for which an ALJ may discredit a

medical opinion.  *See Ledford v. Astrue*, 311 F. App'x 746, 754 (6th Cir. 2008).

Moreover, as the ALJ properly noted, Dr. Nenonene's conclusion that Plaintiff is disabled

is inconsistent with his treatment notes indicating mostly normal physical examination

findings, including clear lungs, normal heart, normal blood pressure, and normal

neurological findings.  (*PageID##* 526-41, 584-95, 802-46).  Where a physician's opinion

is not accompanied by the kinds of findings of clinical and diagnostic evidence required

to support a doctor's opinion that a claimant has disabling limitations, the ALJ is not

required to accept it.  *See* 20 C.F.R. § 404.1527(c)(3) ("Supportability. The more a

medical source presents relevant evidence to support an opinion, particularly medical

signs and laboratory findings, the more weight we will give that opinion.  The better an

explanation a source provides for an opinion, the more weight we will give that

opinion.").  Thus, Dr.  Nenonene's conclusory opinions were properly discounted by the

ALJ.  Social Security Regulations place the burden on the claimant to produce evidence

to show the existence of a disability.  20 C.F.R. § 404.1512(a); *Landsaw v. Sec'y of

Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  Thus, given the lack of

supporting treatment records, the ALJ properly discounted Dr. Nenonene's disability

finding.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009)

("Conclusory statements from physicians are properly discounted by ALJs.").  Given this

17

analysis, there is no basis for this Court to conclude that the ALJ failed to apply the appropriate legal standards to Dr. Nenonene's opinion.

In determining Plaintiff's mental limitations, the ALJ restricted Plaintiff to work that involves "simple, routine, and repetitive tasks in a low-stress job (i.e., only occasional changes in work-setting, no hazardous conditions, and no production-rate pace demands, and no public interaction) with superficial interaction with co-workers with no tandem tasks and no 'over the shoulder' supervision," in order to accommodate his functional limitations resulting from his psychological impairments. *See PageID#* 85. This is consistent with the limitations in the opinions provided by the reviewing psychologist, Dr. Tishler, who concluded that Plaintiff was "capable of simple, repetitive tasks, which involves only superficial contact with the public in a low stress work environment." (*PageID#* 646). The ALJ reasonably relied on Dr. Tishler's medical source opinions as she believed his opinion best reflected an evaluation of the record evidence as a whole. (*PageID#* 87). See 20 C.F.R. § 404.1527(c)(4). The ALJ also gave Plaintiff the benefit of the doubt regarding his subjective allegations and included additional limitations restricting Plaintiff to work without public contact and reduced interaction with co-workers and supervisors in the workplace. (*PageID#* 87).

The ALJ declined to afford controlling or deferential weight to Dr. Wee and Counselor Barker's ultimate conclusion that Plaintiff is markedly restricted in activities of daily living; extremely restricted in difficulties maintaining social function; and markedly restricted in deficiencies of concentration, persistence, or pace resulting in failure to

18

complete tasks in a timely manner. (*PageID##* 719-20).  The ALJ based her decision on

the following rationale:

> Treating psychiatrist and counselor provided a medical source statement
> noting that the claimant must avoid public/crowded areas due to panic
> attacks (Exhibit 27F).  A lot of this report recounts various subjective
> complaints and aspects of the claimant's physical issues that are outside
> the psychiatric range.  However, he was nonetheless assessed as markedly to
> extremely impaired in functioning. Given that he sees his therapist only
> monthly and psychiatrist every 8 weeks (he did see the psychiatrist monthly
> at first) and there has been no reported need for crisis intervention or
> hospitalization these ratings – which would suggest a listing-level mental
> impairment – cannot be given significant weight.

(*PageID#* 88).

Accordingly, the ALJ articulated good reasons that were supported by substantial

evidence for declining to adopt the disability findings of Dr. Wee and Counselor Barker.

Plaintiff also urges in his Statement of Errors that in making Plaintiff's RFC

finding, the ALJ did not fully account for the combination of his physical and mental

impairments.  (Doc. #7, *PageID#* 863).

In determining whether a claimant is capable of working, the ALJ must consider

"the combined effect of all of the claimant's impairments without regard to whether any

such impairment, if considered separately, would be of sufficient severity to render the

claimant disabled."  *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1071 (6th

Cir. 1992).  However, the ALJ does not necessarily need to provide a detailed "combined

effects" analysis.  *See Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th

Cir. 1990).  "An ALJ's individual discussion of multiple impairments does not imply that

he failed to consider the effect of the impairments in combination." *Id.*  Instead, it is sufficient for the ALJ to refer to the claimant's "impairments" (plural) and "combination of impairments." *Id.*

Here, the ALJ's decision shows that she properly considered the combined effects of Plaintiff's physical and mental impairments.  The ALJ determined that, "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." (*PageID#* 83).  Similarly, the ALJ states, "reports note that some of claimant's chest pain and other physical complaints may be attributable to anxiety attacks.  Low stress environment and the additional restrictions as discussed below are incorporated to address claimant's mental issues and at the same time avoid exacerbating cardiac issues." (*PageID#* 87).  Moreover, in determining Plaintiff's RFC, the ALJ considered both Plaintiff's physical and mental impairments.  Due to Plaintiff's physical impairments, the ALJ restricted Plaintiff to jobs with no climbing ladders, ropes or scaffolds; only occasional climbing ramps or stairs; only occasional balancing, stooping, kneeling, crouching and crawling; no overhead reaching; clean-air, temperature-controlled environment; and no hazardous machinery or unprotected heights. (*PageID#* 85).  In light of Plaintiff's dysthymic disorder and panic disorder, the ALJ limited Plaintiff's RFC to unskilled work.  (*PageID#* 90).  Accordingly, the ALJ's decision demonstrates that Plaintiff's mental and physical impairments were considered collectively.  *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  This reasoned analysis is supported by substantial evidence.

The Court finds the ALJ's determination not to give the opinions of Drs. Nenonene and Wee controlling or deferential weight is well-supported by substantial evidence, and her reasons for discrediting their opinions are adequately set forth in the decision. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Further, the functional limitations resulting from Plaintiff's impairments are adequately addressed by the ALJ's RFC assessment. As such, the Court is not free to re-weigh the medical source opinions or to resolve other evidentiary conflicts. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)("there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir.1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). In such circumstances, the Court is required to affirm the ALJ's conclusion that Plaintiff is not disabled. *See id.*

## IT IS THEREFORE RECOMMENDED THAT:

1.   The ALJ's decision and non-disability determination be AFFIRMED; and

2.   The case be terminated on the docket of this Court.


October 28, 2013

             s/Sharon L. Ovington
                 Sharon L. Ovington
         Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).